# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

VALLEY JOIST BD HOLDINGS, ) 
LLC, a Delaware limited liability ) 
company, ) 
         ) 
         Plaintiff, )    C.A. No. N20C-07-072 MMJ CCLD 
         ) 
         v. ) 
         ) 
EBSCO INDUSTRIES, INC., ) 
         ) 
         Defendant. ) 

Submitted: January 21, 2021
Decided: March 10, 2021

On Defendant's Motion to Dismiss
**GRANTED**

## OPINION

Joseph B. Cicero, Esq., Aidan T. Hamilton, Esq., Chipman Brown Cicero & Cole, LLP, Wilmington, Delaware, Jeffrey H. Zaiger, Esq. (Argued), Judd Lindenfeld, Esq., Zaiger LLC, New York, New York, *Attorneys for Plaintiff Valley Joist BD Holdings, LLC.*

John P. DiTomo, Esq. (Argued), Sara Toscano, Esq., Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, Delaware, *Attorneys for Defendant EBSCO Industries, Inc.*

**JOHNSTON, J.**

# FACTUAL AND PROCEDURAL CONTEXT

## *Parties*

This dispute follows the execution of a Stock Purchase Agreement ("SPA") by the parties. Plaintiff Valley Joist BD Holdings, LLC ("VJ Holdings") is a Delaware limited liability company.[1] Defendant EBSCO Industries, Inc. ("EBSCO") is a Delaware corporation with its principal place of business is Birmingham, Alabama.[2] Valley Joist Inc., the entity acquired through the SPA, was converted after the purchase into a Delaware limited liability company named Valley Joist, L.L.C. ("Valley Joist").[3]

## *Valley Joist*

Valley Joist manufactures steel joist and deck products for roofing and flooring systems.[4] The company owns and operates two facilities used for the production of its steel products.[5] "Valley Joist West" is located in Fernley, Nevada.[6] "Valley Joist East" is located in Fort Payne, Alabama.[7] These facilities utilize overhead bridge cranes to lift and move steel.[8] At issue in this lawsuit is Building #14 located at the Valley Joist East facility. Building #14 is a large

---

[1] Compl. ¶ 4.
[2] *Id.* ¶ 5.
[3] *Id.* ¶ 6.
[4] *Id.* ¶ 11.
[5] *Id.* ¶ 12.
[6] *Id.*
[7] *Id.*
[8] *Id.* ¶ 13.

manufacturing building which consists of three crane bays, each equipped with an overhead crane.[9]

### *The Parties Execute the SPA*

On December 29, 2017, the parties executed the SPA, whereby VJ Holdings purchased from EBSCO 100% of the shares of capital stock of Valley Joist.[10] Section 3.4(a) of the SPA states that EBSCO represents and warrants that "the Assets of [Valley Joist] (including the Real Property and buildings, fixtures, mechanical and other systems and improvements thereon) are in good operating condition and repair, ordinary wear and tear excluded, and except for any ordinary, routine maintenance and repair required that in sum are consistent with past practices."[11]

Although VJ Holdings was provided access to all premises, property, and other assets of Valley Joist in the due diligence process, it did not conduct any formal inspections of the structural integrity of any Valley Joist buildings.[12] VJ Holdings instead chose to rely on the representations and warranties made by EBSCO.[13]

---

[9] *Id.* ¶ 14.
[10] *Id.* ¶ 2.
[11] *Id.* ¶ 18.
[12] *Id.* ¶ 24.
[13] *Id.*

### *Valley Joist Discovers Structural Issues*

After the acquisition was completed, Valley Joist experienced problems with the overhead cranes at Valley Joist East. In particular, the cranes on Building #14 would become misaligned or move out of plane.[14] Cranes frequently had to be shut down for repair.[15]

Valley Joist hired a structural engineer to inspect Building #14 and the overhead cranes.[16] As set forth in a report dated July 20, 2018, the structural engineer found that "Building #14 was not built with the appropriate structural support for the overhead cranes."[17] The structural engineer further found that "the weight of the overhead cranes could not be supported by the structure in which they were installed."[18]

After the structural engineer concluded that Building #14 could not be repaired to support the weight of the cranes, Valley Joist decided to construct a new building at Valley Joist East.[19] The new building cost approximately $7.5 million.[20]

---

[14] *Id.* ¶ 32.
[15] *Id.*
[16] *Id.* ¶ 34.
[17] *Id.* ¶ 35.
[18] *Id.*
[19] *Id.* ¶ 37.
[20] *Id.* ¶ 46.

### *Valley Joist Seeks Indemnification*

In the SPA, EBSCO agreed to indemnify VJ Holdings against "Damages arising or resulting from … any inaccuracy in or breach of any representation or warranty made by the Seller in Article III."[21] On July 3, 2018, VJ Holdings sent notice of a direct claim to EBSCO.[22] EBSCO has not indemnified VJ Holdings for any damages.[23]

### *Procedural History*

VJ Holdings filed suit in this Court on July 8, 2020. VJ Holdings asserts claims for breach of contract and fraud in the inducement. On October 21, 2020, EBSCO filed the Motion to Dismiss at issue in this Opinion.

## STANDARD OF REVIEW

### *Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[24] The Court must accept as true all well-pleaded allegations.[25] Every reasonable factual inference will be drawn in the non-moving

---

[21] *Id.* ¶ 25.
[22] *Id.* ¶ 47.
[23] *Id.* ¶ 48.
[24] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[25] *Id.*

party's favor.[26]  If the claimant may recover under that standard of review, the

Court must deny the Motion to Dismiss.[27]

## ANALYSIS

### *Defendant's Contentions*

EBSCO argues that the breach of contract claim must be dismissed because

it is time-barred.  Under the terms of the SPA, VJ Holdings must have notified

EBSCO of its indemnification request *and* filed a complaint within one year of the

closing date in order for the claim to be valid.  This contractually agreed-upon

shortening of the statute of limitation is reasonable, according to EBSCO.  EBSCO

additionally argues that the fraud claim fails because VJ Holdings did not meet the

pleading requirements.  The Complaint does not state allegations with the requisite

particularity.  Further, the allegations contained in the complaint do not give rise to

an inference of fraud or active concealment.  Finally, EBSCO contends that VJ

Holdings is not entitled to attorneys' fees or punitive damages under the SPA.

### *Plaintiff's Contentions*

VJ Holdings argues in response that the breach of contract and fraud claims

should survive this Motion to Dismiss.  VJ Holdings contends that under the terms

of the SPA, providing notice within a year of the closing date preserves all claims

---

[26] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[27] *Spence*, 396 A.2d at 968.

for indemnification. Such a view of the limitations period is in line with the overall dispute resolution framework contemplated by the SPA. VJ Holdings further asserts that its fraud claim meets the pleading requirements. The Complaint specifies the written representation that forms the basis of the claim and provides information sufficient to infer that EBSCO actively concealed the problems with Building #14.

### *Breach of Contract*

Delaware law provides well-settled guidance on interpreting contracts. Contracts must be construed as a whole.[28] A court must give contractual language the ordinary and usual meaning.[29] If a contract is unambiguous, no extrinsic evidence will be considered.[30] It is especially appropriate to rely only on the contractual language where, as here, the parties are sophisticated and the contract was heavily negotiated at arms-length.[31]

Under Delaware law, the statute of limitations for a breach of contract claim is three years.[32] However, this three-year period is only the default. As with other default rules, parties may contract around the statute of limitations. A contractual agreement to shorten the period of time in which a breach of contract claim may be

---

[28] *Northwestern Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).
[29] *Id.*
[30] *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).
[31] *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch.).
[32] 10 *Del. C.* § 8106.

7

brought will generally be upheld, so long as the agreed-upon time period is reasonable.[33]

*Indemnification Procedures Under the SPA*

Sections of the SPA that are applicable to the breach of contract claim are summarized here.  In Section 3.4(a), EBSCO represents that, at the time of closing, "the Assets of [Valley Joist] (including the Real Property and buildings, fixtures, mechanical and other systems and improvements thereon) [were] in good operating condition and repair, ordinary wear and tear excluded."  Section 6.1(a) obligates EBSCO to indemnify VJ Holdings against damages arising from "any inaccuracy in or breach of any representation or warranty made by [EBSCO] in Article III."

Section 6.3(a) provides the limitation that EBSCO shall have no liability pursuant to Section 6.1(a) unless VJ Holdings notifies EBSCO in writing of any claims prior to the one-year anniversary of the closing date.  In other words, in order for EBSCO to have any indemnity obligations based on a breach of the representations and warranties, VJ Holdings must have notified EBSCO of all claims prior to December 29, 2018.  Section 6.3(d) further clarifies:

> For the avoidance of doubt, the Parties hereby acknowledge and agree that (i) the survival periods set forth in this Section 6.3 are contractual limitations periods, (ii) such survival periods are intended to shorten the applicable statute of limitations periods, and (iii) any claim for indemnification brought pursuant to this Article VI must be brought or filed prior to the expiration of the applicable survival period or all

---

[33] *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch.).

remedies with respect to such claim for indemnification, including those remedies provided under this Article VI, will then terminate.

Finally, Section 6.7 sets forth the indemnification claim resolution procedure. Written notice of a claim triggers the Section 6.7 process. EBSCO then has 30 days to investigate and respond, and either accept or reject the indemnification request. If there is no response within 30 days, the claim is deemed rejected. At that point, the Section 6.7 procedure is terminated. Nothing in the SPA enlarges or invalidates the contractual limitations period on the basis of exercising the right to the Section 6.7 claim resolution procedure.

### *VJ Holdings' Claim is Time-Barred*

VJ Holdings argues that once written notice is given pursuant to Section 6.3(a), the one-year limitations period under the SPA is no longer valid, and the default statute of limitations applies.

The Court finds that the terms of the SPA are unambiguous and do not support VJ Holdings' argument.

VJ Holdings and EBSCO, both highly sophisticated parties, negotiated a reduced limitations period for indemnification claims. In order for the breach of contract claim filed in this Court to be valid, VJ Holdings must have: (1) provided EBSCO written notice of its claim within one year of the closing date; *and* (2) filed

9

the legal claim in the appropriate tribunal within the same one-year period.[34]  To

hold otherwise would lead to unreasonable result that timely written notice alone

invalidates the contractual limitations period.  There is nothing in the SPA that

would have prevented VJ Holdings from seeking indemnification through a legal

claim on a parallel track with the Section 6.7 dispute resolution process.

The Court finds that the one-year survival period is not terminated by

providing written notice under Section 6.3(a) or by the conclusion of the resolution

process under Section 6.7.  The survival period is reasonable under the

circumstances.  VJ Holdings' breach of contract claim under Section 3.4(a) was

brought more than one year after closing.  Therefore, the claim is time-barred by

Section 6.3 of the SPA.  The breach of contract claim must be dismissed.

### *Fraud*

To state a claim for fraud, a plaintiff must show: (1) a false representation,

usually one of fact, was made by a defendant; (ii) the defendant knew or believed

the representation was false; (iii) the defendant intended to induce the plaintiff to

act or refrain from acting; (iv) the plaintiff acted or refrained from acting in

justifiable reliance on the representation; and (v) damage resulted from such

---

[34] The parties could have entered into a tolling agreement to extend the survival period pending
an attempted resolution of the indemnification claim pursuant to the procedures set forth in
Section 6.7.  However, that did not happen in this case.

reliance.[35]  The pleading standards are heightened in fraud claims.  Pursuant to Superior Court Rule 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

*Fraud Allegations in the Complaint*

The factual allegations supporting VJ Holdings' fraud claim are contained in paragraphs 38 to 42 of the Complaint.  VJ Holdings first alleges that, at an unspecified time, a transition employee told "Valley Joist's new management team . . . that the problems with the Building #14 cranes were known to EBSCO months prior to its sale of the business."[36]  The Complaint next alleges that in April or May of 2018, the same transition employee told a senior Valley Joist employee "that EBSCO knew about the inadequate structural support for the overhead cranes prior to the sale."[37]  Included in this conversation were quotes for repair that EBSCO allegedly received estimating that it would cost between $3 and $4 million to repair Building #14.[38]

VJ Holdings points to three additional documents that allegedly demonstrate EBSCO's knowledge of the problems with Building #14: (1) a capital expenditure spreadsheet from 2017 that shows expected capital expenditures of $450,000 to

---

[35] *Infomedia Grp., Inc. v. Orange Health Sols., Inc.*, 2020 WL 4384087, at *3 (Del. Super.).
[36] Compl. ¶ 38.
[37] *Id.* ¶ 39.
[38] *Id.*

11

replace the roof of Building #14 and $100,000 to replace crane beams;[39] (2) an email dated September 20, 2017 in which a Valley Joist employee contacted an EBSCO employee about a crane and stated that the "crane will not go south, need to address ASAP";[40] and (3) an email dated November 8, 2017 in which a Valley Joist employee sent two EBSCO employees a list of the scheduled capital expenditures that EBSCO had disclosed to VJ Holdings.[41]

*VJ Holdings Has Failed to Plead Knowledge*

> When a party sues based on a written representation in a contract . . . it is relatively easy to plead a particularized claim of fraud. The plaintiff can readily identify who made what representations where and when, because the specific representations appear in the contract. The plaintiff likewise can readily identify what the defendant gained, which was to induce the plaintiff to enter into the contract. Having pointed to the representations, the plaintiff need only allege facts sufficient to support a reasonable inference that the representations were knowingly false.[42]

In this case, VJ Holdings can meet a number of the pleading requirements. VJ Holdings has pleaded that EBSCO made a fraudulent misrepresentation by stating that Valley Joist "Assets" were in "good operating condition and repair." This alleged misrepresentation was made in Section 3.4(a) of the SPA. The representation was made on December 29, 2017—the date the SPA closed.

---

[39] *Id.* ¶ 40.
[40] *Id.* ¶ 41.
[41] *Id.* ¶ 42.
[42] *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015).

Finally, VJ Holdings has alleged that EBSCO made the misrepresentation "with the specific intent to induce VJ Holdings to act on the purchase of Valley Joist and to refrain from inspecting the condition of the buildings and fixtures at Valley Joist East, including Building #14 and its cranes."[43]  Therefore, VJ Holdings' final pleading requirement is that it demonstrate facts sufficient to support a reasonable inference that EBSCO knew the representation was false.

VJ Holdings argues that for purposes of a reasonable inference, knowledge may be pled generally.  Additionally, it is reasonable to infer that EBSCO was aware of the structural problems with Building #14 because EBSCO was kept informed of the condition of all Valley Joist assets.  To support the argument that it met the pleadings standards, VJ Holdings relies on *Prairie Capital III, L.P.  v. Double E Holding Corporation*.[44]

In *Prairie Capital*, the Court of Chancery analyzed several claims arising out the sale of a portfolio company, including a counterclaim for fraud.  The counterclaim plaintiffs alleged that the counterclaim defendants made: (1) fraudulent extra-contractual claims not included in the parties' agreement; and (2) fraudulent contractual representations in the agreement.[45]  The counterclaim plaintiffs alleged that there were four contractual misrepresentations.  First, the

---

[43] Compl. ¶ 66.
[44] 132 A.3d 35.
[45] *Id.* at 48.

counterclaim defendants breached a representation that there had been no changes in the way the business operated by "deviating drastically and materially" from the prior course of business and deliberately falsifying internal accounting to hide the change in operation.[46] Second, the counterclaim defendants breached a representation that the Accounts Receivables provided were accurate when, in fact, they had been falsified.[47] Third, the counterclaim defendants breached a representation—that the financial statements provided were accurate—by providing falsified documents.[48] Fourth, the counterclaim defendants breached a representation—that they had complied with all laws—by fraudulently inducing the counterclaim plaintiffs to enter into the agreement.[49]

The Court of Chancery analyzed each individual representation to first decide whether the representation was false when made and, if so, whether the counterclaim defendants knew it was false. The counterclaim included numerous specific allegations that led to an inference that high-level executives from the counterclaim defendant companies not only knew about the false representations, but engaged in a systematic effort to conceal the truth about the financial information from the counterclaim plaintiffs. Ultimately, the Court of Chancery

---

[46] *Id.* at 55-56.
[47] *Id.* at 56-57.
[48] *Id.* at 57-58.
[49] *Id.* at 58-59.

14

held that the allegations contained in the complaint met the pleading requirements with respect to two of the four contractual representations.[50]

The facts in this case are distinguishable from the facts in *Prairie Capital*. As an initial matter, the Court will not consider the repair quote from March 2018 that VJ Holdings relies on in paragraph 39 of the Complaint. Generally, the Court will only consider the pleadings when deciding a motion to dismiss. [51] However, the Court retains discretion to decide whether or not to consider extraneous documents.[52] Because the repair quote was created almost three months *after* the closing date of the SPA, it does not have any bearing on what EBSCO knew *at the time* of closing. Therefore, the Court finds that the repair quote is irrelevant.

The remaining factual assertions contained in the Complaint are insufficient. Broad statements that EBSCO knew about "the problems" with Building #14 prior to closing do not lead to an inference that EBSCO was aware of the structural issues. The references to an estimated $550,000 cost to repair Building #14 and to one crane that would not "go south" likewise do not lead to inference that EBSCO was aware that Building #14 would need to be completely rebuilt. Finally, one internal email that failed to mention the estimated capital expenditures does not

---

[50] *Id.* at 66.
[51] *Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. 2012).
[52] *Id.* at 444.

lead to a reasonable inference that EBSCO made an affirmative attempt to conceal material facts about the condition of Building #14.

It appears to the Court that VJ Holdings is attempting to circumvent the negotiated shortened limitations period by re-casting its breach of contract claim as a fraud claim.[53] The Court finds that VJ Holdings has failed to plead EBSCO's pre-closing knowledge with particularity. In the absence of a reasonable inference of pre-closing knowledge of the condition of Building #14, as allegedly misrepresented in the Section 3.4(a) warranties, VJ Holdings' claim cannot meet the heightened pleadings requirements of Rule 9(b). Therefore, the fraud claim must be dismissed.

## CONCLUSION

VJ Holdings' breach of contract claim is time-barred by the terms of the SPA. The parties contractually negotiated for a shortened limitations period of one year after closing. Neither Section 6.3(a) written notice nor conclusion of the Section 6.7 claim resolution process terminates the one-year survival period. The breach of contract claim was filed in this Court after the expiration of that one-year period and must be dismissed.

---

[53] The default statute of limitations for a fraud claim is three years. This statute of limitations period was not altered by the SPA. Therefore, VJ Holdings' fraud claim could not be time-barred by the SPA.

VJ Holdings' fraud claim fails because it was not pled with the requisite particularity. The allegations contained in the Complaint are insufficient to lead to a reasonable inference that EBSCO knew about the structural issues with Building #14 at the time EBSCO made the representations contained in the SPA. As attorneys' fees and punitive damages could only be granted if VJ Holdings was successful in its suit, the Court need not address the claims for attorneys' fees and punitive damages at this time.

**THEREFORE,** EBSCO's Motion to Dismiss is hereby **GRANTED.**

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*
The Honorable Mary M. Johnston

17